**UNITED STATES of America,**
**Appellant,**

v.

**Jane DOE, Appellee.**

**No. 90–3027.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1990.

Decided May 24, 1991.

---

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Thomas E. Zeno, and Ann L. Rosenfield, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellant.

Charles B. Wayne (appointed by the Court) Washington, D.C., for appellee.

Before MIKVA, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

Concurring opinion filed by Circuit Judge D.H. GINSBURG.

MIKVA, Chief Judge:

This appeal raises statutory and constitutional challenges to the substantial assistance provision of the United States Sentencing Guidelines. *See* United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1 (1990). The district court concluded that section 5K1.1, which permits a court to depart from the guidelines to recognize a defendant's cooperation with authorities only upon motion of the government, violates due process. *See United States v. Roberts*, 726 F.Supp. 1359, 1373–77 (D.D.C. 1989). Although we find the issues presented to be significant and challenging, we reverse the district court's decision.

## I.

Jane Doe was indicted on charges of possessing twenty-two kilograms of marijuana with intent to distribute. *See* 21 U.S.C. §§ 841(a), 841(b)(1)(D) (1988). She subsequently pled guilty to the indictment and, although no agreement was ever executed, cooperated with the prosecutor and law enforcement authorities in the hopes of obtaining a lower sentence. On several occasions, Doe provided D.C. drug interdiction officers with names, addresses, telephone numbers, and other information identifying alleged drug traffickers in several cities. The D.C. authorities contacted local officials in those cities, but otherwise showed little interest in Doe's information. The U.S. Attorney's Office never filed a

motion requesting the court to depart downward from the sentencing guidelines based upon Doe's assistance. *See* U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.").

The district court held that section 5K1.1 violates a defendant's due process rights by "preclud[ing her] from contesting the refusal of the prosecution to acknowledge [her] substantial cooperation with law enforcement authorities." *See Roberts*, 726 F.Supp. at 1374, 1375 ("It is difficult to conceive of a parallel situation in the law where substantial liberty interests and consequences provided for by statute are beyond the power of inquiry by anyone."). The court appeared to base its finding principally on "substantive" due process notions—namely, the right to be sentenced on the basis of true and accurate information, and the right to contest the facts relied on by the court and to question the proceedings. *See id.* at 1374–75. The court objected particularly to the "Departure Committee" used by the U.S. Attorney for this district to determine when to move for departures, calling it a "secret" body "composed of individuals other than counsel prosecuting the case" and "operating under standards and procedures unknown to the Court and to the defendants." *Id.* at 1375–76.

As a remedy for section 5K1.1's perceived constitutional infirmities, the district court proposed to review the government's decision not to move for a downward departure under an "arbitrary and capricious" standard and scheduled an evidentiary hearing to explore Doe's assistance. *See id.* at 1375, 1377. At that hearing, the district court determined that Doe had in fact provided substantial assistance to authorities and concluded that the government acted arbitrarily and capriciously in refusing to file a departure motion. Based primarily on its finding of assistance, the court departed from the applicable guideline range (which prescribed between 21

and 27 months incarceration and a fine between $5,000 and $50,000) by imposing a sentence of four months incarceration, two years of supervised release, and a $1,000 fine. The government's appeal followed.

## II.

■ We have jurisdiction to hear this appeal under 18 U.S.C. § 3742(b) (1988) (permitting government to appeal an otherwise final sentence that was "imposed in violation of law" or "imposed as a result of an incorrect application of the sentencing guidelines"). *See United States v. Chotas,* 913 F.2d 897, 899 (11th Cir.1990) (holding that "government's claim that the district court lacked the authority to depart under § 5K1.1 in the absence of a governmental motion presents a cognizable claim on appeal under § 3742(b)(2) as a misapplication of the sentencing guidelines"), *cert. denied,* — U.S. —, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991). *Cf. United States v. LaGuardia,* 902 F.2d 1010, 1012 (1st Cir. 1990) (finding jurisdiction to hear defendant's constitutional challenge to substantial assistance provision under 18 U.S.C. § 3742(a)(1), which permits defendants to appeal sentences "imposed in violation of law"); *United States v. Kuntz,* 908 F.2d 655, 656–57 (10th Cir.1990). Our standard of review is *de novo* because the district court's decision that it possessed authority to depart from section 5K1.1 even absent a government motion presents a pure question of law. *See Chotas,* 913 F.2d at 900.

Although the district court applied its holding to 18 U.S.C. § 3553(e) (1988), the statutory provision governing departures below mandatory minimum sentences, as well as to U.S.S.G. § 5K1.1, only the latter provision is at issue in this appeal. The statute under which Doe was indicted contains no minimum sentence. *See* 21 U.S.C. § 841(b)(1)(D). *See also Roberts,* 726 F.Supp. at 1360–61 (discussing § 3553(e) in connection with defendant Stephaney Roberts, who was indicted for distribution of cocaine base and whose sentencing is not before this court).

Preliminaries aside, we turn to the merits.

## A. *Substantive Due Process Concerns*

The district court based its decision to override section 5K1.1's government motion requirement principally on substantive due process concerns applicable to the criminal sentencing process. As the district court correctly noted, "[i]t is well established by the decided cases that an accused has a right to due process during the sentencing stage." *Roberts,* 726 F.Supp. at 1374. Indeed, we have previously emphasized that the Fifth Amendment's protections against deprivation of liberty without due process "are not suspended with the pronouncement of guilt, but continue to operate in the sentencing process." *United States v. Lemon,* 723 F.2d 922, 933 (D.C.Cir.1983). *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977) (holding that the sentencing process "must satisfy the requirements of the Due Process Clause" and that a criminal defendant "has a legitimate interest in the character of the procedure which leads to the imposition of sentence").

Guided by these tenets, courts have identified certain rights so fundamental in the sentencing context as to be compelled by due process. *See, e.g., Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) (finding sentence based on "materially untrue" assumptions "inconsistent with due process"); *Gardner,* 430 U.S. at 362, 97 S.Ct. at 1206–07 (due process requires that defendant in capital proceeding be allowed to explain or deny information underlying sentence); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion) (sentencer in capital proceeding may not, consistent with due process, be precluded from considering any mitigating circumstances or information proffered by defendant). Given the nature of the penalty, it may not be surprising that most of the fundamental rights thus identified have involved capital sentencing proceedings.

In a companion appeal, we recently rejected the district court's suggestion that due process entitles criminal defendants to an individualized, judicially-crafted sen-

tence. *See United States v. Mills*, 925 F.2d 455, 462–63 (D.C.Cir.1991). We relied on the Supreme Court's repeated holding that the scope of judicial sentencing discretion is a policy matter within the control of Congress. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989) (noting that "the scope of judicial discretion with respect to a sentence is subject to congressional control"); *Lockett*, 438 U.S. at 605, 98 S.Ct. at 2965 (noting that "the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes").

■ We similarly reject the related suggestion that section 5K1.1's government motion requirement offends due process by preventing a criminal defendant from presenting mitigating evidence (e.g., her cooperation or assistance) at sentencing. Although the Supreme Court has held that a defendant must be allowed to present potentially mitigating evidence in a *capital* sentencing proceeding, *see Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964, that right has never been extended to the non-capital context. *See United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir.1990) (finding that defendant who sought to have court consider his cooperation absent a government motion had no "constitutional right to present evidence of mitigating circumstances prior to his sentencing"), *cert. denied*, — U.S. —, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). Moreover, several other circuits have observed that the fact that Congress could have made assistance entirely irrelevant to sentencing leaves defendants with little room to complain that the government motion provision of section 5K1.1 will sometimes prevent a court from considering their cooperation. *See, e.g., LaGuardia*, 902 F.2d at 1015; *United States v. Lewis*, 896 F.2d 246, 249 (7th Cir.1990); *United States v. Francois*, 889 F.2d 1341, 1344 (4th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990); *United States v. Musser*, 856 F.2d 1484, 1487 (11th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989).

In addition to finding that the guidelines' curtailment of judicial sentencing discretion violates due process, the district court identified several specific due process rights that it believed section 5K1.1 infringed: for example, a defendant's right to be sentenced on the basis of accurate and true information and to contest the facts presented or relied upon during sentencing. *See Roberts*, 726 F.Supp. at 1374. *See also Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (violation of due process where prisoner sentenced on the basis of false assumptions about his criminal record that he never had an opportunity to correct); *United States v. Curran*, 926 F.2d 59, 61 (1st Cir.1991) (discussing defendant's right to inspect or challenge information relied on by sentencing court). To the extent that the district court and Doe rely on these asserted rights to challenge the inability of the court to *consider* information about assistance as a basis for departing from the guidelines, we have already rejected those arguments above. *See, e.g., Roberts*, 726 F.Supp. at 1374 (stating that "[w]hen a defendant has rendered substantial assistance to law enforcement but the government refuses to file the requisite motion, the sentence the Court is required under law to impose will not be based on true and accurate information").

These specific due process rights are relevant on another level, however. A court may always consider a defendant's assistance in selecting a sentence from *within* the guideline range, even if it may not *depart* from the guidelines on that basis. *See* 18 U.S.C. § 3661 (1988) (court may consider any information "concerning the background, character, and conduct" of defendant at sentencing); U.S.S.G. § 1B1.4 (1990) ("In determining the sentence to impose within the guideline range ..., the court may consider, without limitation, any information" concerning the defendant's background, character, and conduct). *Cf. United States v. Huerta*, 878 F.2d 89, 93 (2d Cir.1989) (noting that this authority is "not insubstantial," as the "maximum end of the range for imprisonment may be as much as twenty-five percent greater than the minimum," and the time difference

within a range may be as high as eighty-one months), *cert. denied,* —— U.S. ——, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). Nothing in section 5K1.1, which speaks exclusively to a court's authority to *depart* from the guidelines, infringes on those due process rights that safeguard the accuracy of information properly relied on by the district court in establishing a sentence within the guideline range. Indeed, as other courts have noted, district judges possess "ample power" to ensure that all relevant facts, including the extent of a defendant's assistance, are presented to them prior to sentencing, and "nothing in the guidelines prevents the accused from calling the nature and extent of his assistance to the court's attention." *LaGuardia,* 902 F.2d at 1016 (concluding that section 5K1.1 does not "materially impede the sentencing court's access to relevant facts"). *See also Levy,* 904 F.2d at 1035 n. 2; FED.R.CRIM.P. 32(c)(2)(F) (presentence report shall contain "such other information as may be required by the court"). In this case, Doe herself raised the issue of assistance at the original sentencing hearing, demonstrating how information relevant to sentencing can be brought before the court even absent a government motion.

On a more general level, we note that the government motion provision of section 5K1.1 is predicated on the reasonable assumption that the government is best positioned to " 'supply the court with an accurate report of the extent and effectiveness of the defendant's assistance.' " *LaGuardia,* 902 F.2d at 1015 (quoting *United States v. White,* 869 F.2d 822, 829 (5th Cir.1989), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989)). *See Lewis,* 896 F.2d at 249; *Francois,* 889 F.2d at 1344; *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990). Viewed in this light, the government motion requirement is not a sinister impediment to a defendant's exercise of her substantive due process rights, but rather a practical device that allows the government to give appropriate weight to its investigative and enforcement activities, and relieves courts of the administrative burden that routine review of defendants' claims of assistance would pose. The government's strong institutional interest in ensuring the continued assistance of future defendants affords protection against prosecutorial parsimony in applying section 5K1.1. *See, e.g., LaGuardia,* 902 F.2d at 1016; *Lewis,* 896 F.2d at 249. Moreover, as discussed in section III below, review by the district court remains available in cases where the government's refusal to move for a departure violates the terms of a cooperation agreement, is intended to punish the defendant for exercising her constitutional rights, or is based on some unjustifiable standard or classification such as race.

We thus join those other circuits that have rejected substantive due process challenges to the substantial assistance provision of the sentencing guidelines. *See, e.g., LaGuardia,* 902 F.2d at 1017 (1st Circuit); *United States v. Rexach,* 896 F.2d 710, 712–13 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *Francois,* 889 F.2d at 1344 (4th Circuit); *United States v. Harrison,* 918 F.2d 30, 33 (5th Cir.1990) (per curiam); *Levy,* 904 F.2d at 1035 (6th Circuit); *Lewis,* 896 F.2d at 249 (7th Circuit); *Ayarza,* 874 F.2d at 653 (9th Circuit); *Kuntz,* 908 F.2d at 657 (10th Circuit); *Musser,* 856 F.2d at 1487 (11th Circuit) (addressing 18 U.S.C. § 3553(e)). *But see United States v. Gutierrez,* 908 F.2d 349 (8th Cir.1990), *vacated,* 917 F.2d 379 (8th Cir.1990) (en banc) (mem.) (affirming by an equally divided vote district court's departure from the guidelines absent a government motion). In so doing, we adhere to prior intimations in our own precedent. *See United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990).

### B. *28 U.S.C. § 994(n)*

Doe presents two alternative rationales upon which she urges this court to uphold the district court's *sua sponte* departure from the guidelines. Both are predicated on 28 U.S.C. § 994(n), in which Congress directed that:

> The Commission shall assure that the guidelines reflect the general appropri-

ateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n) (1988). First, Doe contends that the government motion provision of section 5K1.1 is inconsistent with section 994(n), and therefore invalid. Second, Doe argues that section 994(n) confers upon defendants a liberty interest in having their assistance considered during sentencing, and that section 5K1.1 violates minimum constitutional procedural requirements in effectuating that liberty interest.

### 1. Statutory Inconsistency

■ Doe argues that section 5K1.1, which requires a government motion before a court may consider a defendant's assistance, conflicts with section 994(n), in which Congress expressed no intention to so limit consideration of assistance. According to this argument, the Sentencing Commission ignored section 994(n)'s general instruction that the guidelines "take into account a defendant's substantial assistance" and erected a procedural hurdle never envisioned by Congress.

The Sentencing Commission, to which Congress expressly delegated rulemaking authority regarding federal sentencing policy, see 28 U.S.C. §§ 994, 995 (1988), has been described as "an independent agency in every relevant sense." Mistretta, 488 U.S. at 393, 109 S.Ct. at 665. Section 994(n)'s broad instruction to the Sentencing Commission with respect to the substantial assistance guideline is merely one example of this express statutory delegation. The Commission's discharge of its delegated authority is entitled to deference; we can ask only whether section 5K1.1 is a reasonable and permissible construction of section 994(n). See Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); Lewis, 896 F.2d at 247 (applying deferential standard of review to section 5K1.1); United States v. Martinez–

Cortez, 924 F.2d 921, 924 (9th Cir.1991) (per curiam) (applying "sufficiently reasonable" standard to review Sentencing Commission guidelines); United States v. Lee, 887 F.2d 888, 890–91 (8th Cir.1989) (same).

We can find no fault with the Commission's exercise of its delegated authority in this instance. The fact that Congress itself drafted a substantial assistance provision containing a government motion requirement—located, as it so happens, immediately prior to section 994(n) in the original legislation—precludes any doubts as to the reasonableness of the Commission's inclusion of such a requirement in section 5K1.-1. See 18 U.S.C. § 3553(e) (permitting departures below mandatory minimum sentences upon government motion); Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1007(a) (amending 18 U.S.C. § 3553 by adding subsection (e)), § 1008(1) (amending 28 U.S.C. § 994 by adding subsection (n)), 100 Stat. 3207–7 (1986). See also FED. R.CRIM.P. 35(b) (permitting court to correct sentence upon motion of the government to reflect defendant's assistance), amended in part by Anti–Drug Abuse Act, supra, § 1009; Lewis, 896 F.2d at 248 (observing that "[s]ince Congress conditioned the courts' power to lower sentences to reflect substantial assistance on the government's motion, it was not unreasonable for the Sentencing Commission to conclude that Congress intended for it to include a government motion requirement in any guideline it wrote").

We thus reject Doe's statutory inconsistency argument as a basis for overriding section 5K1.1's government motion requirement. Other courts have done the same. See, e.g., Lewis, 896 F.2d at 248 (7th Circuit); United States v. Grant, 886 F.2d 1513, 1514 (8th Cir.1989); Ayarza, 874 F.2d at 653 n. 2 (9th Circuit); United States v. White, 869 F.2d 822, 828–29 (5th Cir.1989), cert. denied, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). See also Ortez, 902 F.2d at 64 (casting doubt on similar statutory challenge). But see United States v. Chotas, 913 F.2d 897, 905 (11th Cir.1990) (Clark, J., concurring in part and dissenting in part) (finding section 5K1.1

contrary to section 994(n), as "Congress knew how to draft a statute with [a government motion] restriction when it wanted to do so"), *cert. denied,* —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991).

### 2. Statutory Liberty Interest

Protected liberty interests may arise from the Due Process Clause itself or from legislative enactments or regulations. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460-61, 109 S.Ct. 1904, 1908-09, 104 L.Ed.2d 506 (1989). We have already rejected the district court's suggestion that section 5K1.1 violates rights inherent in the Due Process Clause. Doe argues, however, that Congress created a liberty interest through section 994(n)— specifically, a criminal defendant's interest in having her assistance considered by the district court at sentencing. Were we to find that section 994(n) in fact creates such a protected liberty interest, we then would need to examine whether, as Doe contends, section 5K1.1 violates minimum constitutional procedural requirements by denying defendants an opportunity to be heard by the relevant decisionmakers. *See Thompson,* 490 U.S. at 460, 109 S.Ct. at 1908 ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." (citations omitted)).

■ Our first task, then, is to determine whether Congress created a protected liberty interest when it enacted section 994(n). The Supreme Court has explained that a legislature "creates a protected liberty interest by placing substantive limitations on official discretion"; that is, by "establishing 'substantive predicates' to govern official decisionmaking and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909 (citations omitted). *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct.

864, 871, 74 L.Ed.2d 675 (1983) (holding that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest"); *Tarpeh–Doe v. United States,* 904 F.2d 719, 722 (D.C.Cir. 1990) ("Whether a given statutory scheme gives rise to a protected interest depends on whether the authority promulgating the statute or regulation has placed *substantive* limits on official discretion."), *cert. denied,* —— U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991).

■ Although section 994(n) contains some isolated mandatory language (i.e., "the Commission *shall assure*"), the overall tenor of the provision is highly permissive, requiring only that the guideline reflect the "general appropriateness" of considering assistance at sentencing. Moreover, we can find no substantive "limits" or "predicates" that cabin the Commission's discretion in any way. *Compare Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910 (finding that prison regulations provided substantive predicates to guide officials' exclusion of visitors); *Helms,* 459 U.S. at 471-72, 103 S.Ct. at 871 (finding that state prison regulations permitted administrative segregation only upon "specified substantive predicates—viz., 'the need for control,' or 'the threat of a serious disturbance' "). Given the generally precatory language of section 994(n), a criminal defendant could not "reasonably form an objective expectation" that her assistance would be considered at sentencing. *Thompson,* 490 U.S. at 465, 109 S.Ct. at 1911.

Our view that the statute is too general to give rise to a protected liberty interest is supported by a 1984 Senate report that addressed similar subsections of section 994 enacted prior to subsection (n). *See* S.Rep. No. 225, 98th Cong., 1st Sess. 174 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3357 (explaining that sections 994(e)–(m) contain only "general statements of legislative direction for the Commission to follow in promulgating guidelines"). Indeed, our holding above that section 994(n) delegates to the Com-

mission the task of deciding how the guidelines should reflect a defendant's assistance effectively prevents us from finding here that the same provision so constrains the Commission's drafting discretion as to create a protected liberty interest.

Having rejected Doe's threshold claim concerning the existence of a liberty interest, we have no cause to test section 5K1.1 against procedural minima.

### III.

Because section 5K1.1 suffers from no constitutional or statutory infirmity, the district court erred in ignoring the government motion requirement and reviewing the government's decision not to move for departure under an arbitrary and capricious standard of review. It does not follow, however, that all review of a prosecutor's decision not to move for departure should be precluded. Rather, we believe that limited review would be available under the same standards currently employed by district courts to review other matters committed to prosecutorial discretion.

█ Despite the broad latitude traditionally accorded to prosecutors regarding matters within their unique competence, such as the selection of charges, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), courts will intervene where a prosecutor attempts to penalize a defendant for exercising his legally protected rights, *see, e.g., Mills*, 925 F.2d at 461–62 (citing *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C.Cir.1987)), or where the prosecutor bases his decision "upon an unjustifiable standard such as race, religion, or other arbitrary classification," *Hayes*, 434 U.S. at 364, 98 S.Ct. at 668–69 (citation omitted). *See also Wayte v. United States*, 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985). In addition to reviewing a prosecutor's actions for vindictiveness or invidious selectivity, courts also will ensure that the government honors contractual commitments with defendants. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (holding that "when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled").

We deem these limited principles of review equally applicable to the government's exercise of its discretion under section 5K1.1 to move for departures. Other courts have reached similar conclusions. *See, e.g., Rexach*, 896 F.2d at 713–14 (noting that "the decision to make or withhold a motion for downward departure must be given the same high level of deference as other prosecutorial decisions," but recognizing that a prosecutor's "determination of dissatisfaction" with the defendant's assistance "cannot be made invidiously or in bad faith"); *United States v. Bayles*, 923 F.2d 70, 72 (7th Cir.1991) (suggesting that review of prosecutor's decision not to depart would be available under principles applicable to other prosecutorial decisions); *United States v. Mena*, 925 F.2d 354, 356 (9th Cir.1991) (acknowledging possibility of review where government induces defendant's cooperation "based upon a promise of a motion for departure," or otherwise acts in "bad faith").

█ On the record before us, we find no evidence suggesting that the government exceeded its broad discretion in refusing to move the district court for a departure on Doe's behalf. Rather, the U.S. Attorney's Office acted within the province of authority that Congress, through the Sentencing Commission, bestowed upon it. It is not for us to superimpose our preferences on those bodies.

### IV.

We conclude that section 5K1.1 suffers from no constitutional or statutory infirmity sufficient to justify the district court's decision to depart *sua sponte* from the applicable guidelines. Nor did the government's failure to move for a substantial assistance departure in this case exceed the bounds of traditional prosecutorial discretion. We therefore reverse the decision of the district court insofar as it departed from the applicable guidelines on the basis

of the defendant's substantial assistance, and remand for further sentencing proceedings.

The government also objects to the district court's apparent reliance during sentencing on background factors such as the defendant's lack of criminal history, her family responsibilities and pregnancy, and her employment history. While it is true that placing undue emphasis on such factors could violate the guidelines, *see, e.g.,* U.S.S.G. § 5H1.6 (providing that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines"); U.S.S.G. § 5H1.5 (providing that "[e]mployment record is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall"); *United States v. Pozzy,* 902 F.2d 133, 138 (1st Cir.1990) (rejecting a "totality of the circumstances" approach to sentencing, where background factors included defendant's pregnancy), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990), we will not pretermit the district court's inquiry on remand. Rather, the district court is entitled to resentence Doe on a clean slate.

It is so ordered.

D.H. GINSBURG, Circuit Judge, concurring:

I concur generally in the court's opinion but write separately to emphasize two points. First, I do not agree with the implication that because the Congress could make a convict's assistance entirely irrelevant to the sentence he receives, once the Congress (or the Sentencing Commission) has decided that assistance is to be a factor in sentencing, the Due Process Clause of the Fifth Amendment has nothing to say about the procedures that must be used to implement that decision. More specifically, the requirement of due process limits the Congress's authority to delegate to the prosecutor the job of finding the facts and making the judgment that the legislature deems relevant to sentencing. For example, even though the Constitution does not require the Congress to take account of whether a convict was ignorant of the law he violated, it seems unlikely that the Congress could constitutionally condition a reduction in sentence upon the prosecutor's unreviewable judgment on that issue.

Rather, I believe that § 5K1.1 is constitutional, if it is, because (1) it involves a very narrow delegation of "sentencing" authority to the prosecutor, concerning a matter within his personal experience; (2) he has a strong incentive not to abuse that authority; and (3) he would likely be unable or unwilling to use the authority at all if his decisions were ordinarily subject either to judicial review or to the due process protections applicable to court proceedings. *See Wayte v. United States,* 470 U.S. 598, 607–09, 105 S.Ct. 1524, 1530–32, 84 L.Ed.2d 547 (1985) (court will not examine decision whether to prosecute except for intentional discrimination on a basis, such as race, religion, or the defendant's exercise of a statutory or constitutional right, that would violate the equal protection norm implicit in the Due Process Clause of the Fifth Amendment).

Second, even in these particular circumstances, the proper resolution of the constitutional issue is far from clear. In addition to the cases concerning due process in sentencing, which the court cites, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), suggests that granting the prosecutor unreviewable authority to make a judgment that could decrease the convict's sentence may deny him due process. Noting that "[w]hether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss," the Court found that parole revocation deprives the convict of a constitutionally protected liberty interest and is therefore subject to various procedural protections. *Id.* at 481, 92 S.Ct. at 2600 (internal quotation marks and citation deleted). Moreover, in the course of reasoning that "the full panoply of rights due a defendant in [a criminal] prosecution [do] not apply to parole revocations," the Court noted that "[p]arole arises after the end of the criminal prosecution, including imposition of sentence," *id.* at

480, 92 S.Ct. at 2600. *See also Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 9, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) (recognizing "crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires"); *id.* at 9–10, 99 S.Ct. at 2105 (recognizing distinction between "retrospective factual question" and "informed prediction[ ]"); and *Mistretta v. United States,* 488 U.S. 361, 391 n. 17, 109 S.Ct. 647, 664 n. 17, 102 L.Ed.2d 714 (1989) (vesting in Executive Branch rulemaking authority regarding sentencing would raise constitutional difficulties).

The narrowness of the sentencing authority delegated to the prosecutor by § 5K1.1 and the virtual unanimity of the circuits in upholding it as constitutional, however, together lead me to join the court in holding that the district court's judgment must be reversed. Nonetheless, the difficulty of the issue, the magnitude of the stakes, and the superficiality of the analysis underlying several of the circuits' decisions give reason to hope that the Supreme Court will at some point evaluate § 5K1.1 in the light shed by its prior teachings on the requirements of due process in the sentencing context.