UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, Defendant–Appellant.

No. 89–3071.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1991.

Decided Aug. 2, 1991.

Scott D. Levine, Asst. U.S. Atty., Criminal Div., Chicago, Ill., for plaintiff-appellee.

Jack M. Denaro, Miami, Fla., for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this criminal appeal, we must decide under what circumstances, if any, the United States is required to file a motion for correction of sentence under FED.R.CRIM.P. 35(b) ("Rule 35(b)" and "Rule"). In May 1988, John Doe ("Doe")[1] was convicted in the Northern District of Illinois of two counts of possession with intent to distribute cocaine and one count of conspiracy to distribute cocaine, *see* 21 U.S.C. §§ 841(a)(1) and 846. He did not appeal his conviction. Within one year of sentencing, however, he moved the District Court to order the United States, based on his substantial assistance in the investigation of other crimes, to file a Rule 35(b) Correction of Sentence Motion, or in the alternative, to correct his sentence pursuant to Rule 35(b) notwithstanding the absence of a Government's motion. The District Court denied Doe's request. We affirm.

## FACTUAL BACKGROUND

Subsequent to Doe's conviction and before his sentence in this case, Doe entered into agreements of cooperation (Defendant's Exhibits Nos. 1 and 2) with the United States Attorney's ("U.S. Attorney's") Offices in two districts outside of Illinois. In both of these agreements, Doe promised to provide substantial assistance in the investigation and prosecution of narcotics offenses. Defendant's Exhibit No. 1, ¶ 1; Defendant's Exhibit No. 2, ¶ 1. In

---

1. To help protect the safety of Doe and his family, this Court has ordered that Doe remain anonymous in this appeal. In keeping with the spirit of our Order, only the facts absolutely necessary to a full understanding or our opinion will be disclosed.

return, the United States promised that any information provided by Doe pursuant to the agreements would not be used against him. Defendant's Exhibit No. 1, ¶ 3; Defendant's Exhibit No. 2, ¶ 4(a). In addition, assuming complete cooperation by Doe, the agreements bound the U.S. Attorney's Offices in the two districts to make every effort to persuade the U.S. Attorney for the Northern District of Illinois to file a motion for correction of sentence under Rule 35(b). Defendant's Exhibit No. 1, ¶ 8; Defendant's Exhibit No. 2, ¶ 4(e)(i).[2] Finally, the agreements required that information learned from Doe would not be disclosed to anyone not ratifying the agreements to the benefit of Doe. Defendant's Exhibit No. 1, ¶ 10; Defendant's Exhibit No. 2, ¶ 5.

From all indications, Doe's cooperation pursuant to these agreements was unequivocal and exemplary.[3] Authorities in each of the two districts were thoroughly satisfied and each recommended in writing that a Rule 35(b) motion be filed in the case before us. But the U.S. Attorney for the Northern District of Illinois was persuaded

that Doe's crimes were too serious to warrant any leniency regardless of his substantial assistance elsewhere. Consequently, the Government filed no Rule 35(b) motion in the present proceedings.

In September 1988, the District Court sentenced Doe.[4] Both sides agree that his conviction carried a statutory ten year mandatory minimum prison term, see 21 U.S.C. § 841(b)(1)(A).[5] The District Court sentenced him to fifteen years concurrently on the two substantive counts and suspended sentence on the conspiracy count. Based on his substantial assistance, Doe asked the District Court to reduce his sentence to ten years pursuant to the predecessor[6] of the current Rule 35(b). The District Court agreed and reduced Doe's sentence to the statutory minimum ten years.

Doe then sought to have his sentence reduced to less than ten years. Because the earlier version of Rule 35(b) does not authorize a reduction below a statutory minimum term, a sentence correction under the current version of Rule 35(b) (which

**2.** Rule 35(b) states:

The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

**3.** The U.S. Attorney for the Northern District of Illinois disputes this, contending that Doe has hidden some of his drug-derived assets from authorities. For purposes of this opinion, however, we will assume Doe has told all that he knows.

**4.** Doe was convicted for crimes he committed before November 1, 1987. The Federal Sentencing Guidelines thus do not dictate his sentence. See Comprehensive Crime Control Act, Pub.L. 98–473 § 235(a)(1), 98 Stat. 1837, 2031 (1984); Sentencing Reform Amendments Act, Pub.L. 99–217 § 4, 99 Stat. 1728 (1985).

**5.** The ten year minimum sentence imposed through the Anti–Drug Abuse Act of 1986,

Pub.L. 99–570 § 1002, 100 Stat. 3207, 3207–2 (1986), became effective the day it was enacted, October 27, 1986. *United States v. Duprey*, 895 F.2d 303, 311–12 (7th Cir.1989), *cert. den.,* —— U.S. ——, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *see Gozlon–Peretz v. United States,* —— U.S. ——, ——, 111 S.Ct. 840, 847, 112 L.Ed.2d 919 (1991).

**6.** The earlier version of Rule 35(b) was announced by the Supreme Court on April 29, 1985:

A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Amendments to Rules, 105 F.R.D. 179, 183 (1985).

does authorize such a reduction, *see supra* note 2) was necessary. But a Government motion is required to trigger the current Rule 35(b), and the U.S. Attorney for the Northern District of Illinois has continually refused to file the motion.

Doe then filed the motion at issue in this appeal. He asked the District Court to order the United States to file the Rule 35(b) motion, or in the alternative, to grant him a sentence correction without a Government motion. Doe has argued that the Illinois office is bound by one of the cooperation agreements to file the motion and, if not, that the Government's refusal to file the motion violated his constitutional rights. The District Court denied Doe's request, finding that the Illinois office owed no contractual obligation to file the motion and rejecting Doe's constitutional arguments. We agree with the District Court and affirm.

## ANALYSIS

### 1. Which Rule 35(b) applies?

■ Before we can delve into the complexities surrounding breach of contract and due process, we are confronted with a rather disturbing question. Why should Doe receive the benefit of both the old and the new Rule 35(b)? The answer is that Congress says so.

The new Rule 35(b) was enacted by Congress as a part of the Comprehensive Crime Control Act of 1984. *See* Pub.L. 98–473 § 215(b), 98 Stat. 1837, 2016 (1984). The effective date of the amendment was November 1, 1987. *See* Pub.L. 98–473 § 235(a)(1); Pub.L. 99–217 § 4. Notwithstanding this effective date, Congress provided in the Sentencing Act of 1987 that the new Rule 35(b) would apply retroactively to crimes committed before November 1, 1987. *See* Pub.L. 100–182 § 24(3), 101 Stat. 1266, 1271 (1987).

But this does not prevent the old Rule 35(b) from applying. The Sentencing Act of 1987 also dictates that the prior version as announced by the Supreme Court on April 29, 1985, applies to all crimes committed before the effective date of the new Rule, November 1, 1987. *See* Pub.L. 100–182 § 22.

Because Doe's crimes were committed before November 1, 1987, he fits into a window where both versions of the Rule apply. The new Rule applies because it is retroactive. The old Rule applies because his crimes were committed before the effective date of the new Rule. Therefore, the District Court was authorized to reduce his sentence to ten years based on Doe's earlier motion and would be obligated, if Doe were successful in this appeal, to decide whether his sentence should be reduced any further.

### 2. Was the U.S. Attorney for the Northern District of Illinois contractually obligated to file a motion?

■ Doe argues that one of his cooperation agreements obligates the U.S. Attorney for the Northern District of Illinois to file a Rule 35(b) motion. The cooperation agreements are contracts. If the United States breaches express or implied terms in these agreements, then it violates due process. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Lewis,* 896 F.2d 246, 249 (7th Cir.1990); *United States v. Rexach,* 896 F.2d 710, 713–14 (2d Cir.1990), *cert. den.,* — U.S. —, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). But the content of the promises is a question of fact that will only be reversed if clearly erroneous. *United States v. Daniels,* 902 F.2d 1238, 1243 (7th Cir.1990), *cert. den.,* — U.S. —, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *United States v. Strawser,* 739 F.2d 1226, 1229 (7th Cir.1984), *cert. den.,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984). The District Court finding under review is that the U.S. Attorney for the Northern District of Illinois did not accept "an obligation to persuade himself that a motion should be filed." Order Denying Rule 35(b) Motion.

Neither of the cooperation agreements contains *express* provisions to file the motion. The two agreeing districts have merely promised to "make every effort to persuade the ... Northern District of Illinois, to file ... a full and complete correc-

tion of sentence motion under Rule 35(b)." Defendant's Exhibit No. 1, ¶ 8; *see* Defendant's Exhibit No. 2, ¶ 4(e)(i). Nowhere in either document is a term expressly stating that the motion would definitely be filed. One of the agreements even counters such a reading by stating that Doe "understands ... that the United States Attorney's Office in the Northern District of Illinois is not bound by that recommendation." Defendant's Exhibit No. 2, ¶ 4(d). And further, both contracts contain language that no other promises outside those contained in the written documents were made. Defendant's Exhibit No. 1, ¶ 11; Defendant's Exhibit No. 2, ¶ 7. No express promises can be found in these documents.

■ For many of the same reasons, Doe cannot establish an *implied* contractual right to the motion. Our Circuit has taken a restrictive view towards implying sentencing promises into agreements. *See United States ex rel. Robinson v. Israel*, 603 F.2d 635, 637–38 (7th Cir.1979) (en banc) (holding that a promise to recommend a sentence between ten and forty years did not prevent the Government from recommending to the parole board that the petitioner serve the maximum time possible), *cert. den.*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980); *United States v. Mooney*, 654 F.2d 482, 485–87 (7th Cir. 1981) (holding that a Government promise to recommend a ten year prison term did not imply a promise not to resist the defendant's Rule 35 motion to reduce the sentence to ten years after the District Court had rejected the Government's earlier ten-year recommendation).

Other Circuits have more squarely faced the argument for an implied term to file a Rule 35(b) motion. The Eighth Circuit flatly rejects the notion:

> Furthermore, because of the extraordinary nature of the relief provided by

[Rule 35(b)] and the clear dictate that the government must first file a motion before the court may depart, no defendant could reasonably read a plea agreement to bind the government to file a [Rule 35(b)] motion absent an explicit promise to do so. Therefore, *there can be no ambiguity in the absence of an express government promise in the plea agreements to file a [Rule 35(b)] motion.* An express promise to file a motion unambiguously binds the government. The lack of such a promise is clear evidence that such a promise was not made.

*United States v. Coleman*, 895 F.2d 501, 506 (8th Cir.1990) (emphasis in original).[7] The Second Circuit also takes a skeptical view towards implying such a term. In *Rexach*, the prosecutor specifically agreed to consider whether the defendant had offered substantial assistance that would warrant the filing of a Section 3553(e) motion, *see supra* note 7. When the prosecutor failed to file the motion, the defendant argued the agreement implied a term requiring the motion be filed. The Court held that because the cooperation agreement did not define specific objective standards for evaluating the degree of the defendant's assistance, the agreement did no more than "create broad prosecutorial discretion, limited only by the subjective good faith of the prosecutor." *Rexach*, 896 F.2d at 714.

■ But rather than advocating any express or implied right to the motion arising from the agreements as originally negotiated, Doe instead argues that the Illinois office has adopted and ratified one of the two agreements as its own. It is undisputed that the U.S. Attorney for the Northern District of Illinois received permission from the U.S. Attorney in one of the two

---

7. *Coleman* is actually an opinion construing the authority conferred by 18 U.S.C. § 3553(e) to impose a sentence below a statutory minimum based upon a defendant's substantial assistance. Throughout our opinion, we cite precedent construing Rule 35(b), § 3553(e), and Federal Sentencing Guidelines § 5K1.1 (permitting a district court to depart from the Sentencing Guidelines for substantial assistance) interchangeably. We do this because the language of all three provisions is parallel. Moreover, both Rule 35(b) and § 3553(e) limit the authority to impose or to reduce to a lower sentence "in accordance with the guidelines and policy statements issued by the Sentencing Commission." And so, Rule 35(b) and § 3553(e) must be read consistently with their Sentencing Guidelines counterpart, § 5K1.1.

agreeing districts to interrogate Doe under his agreement with that district. Further, the Illinois office concedes it is bound by the clause preventing the use of any information provided under the agreement against Doe. And finally, the Illinois office certainly learned of information provided by Doe under the agreement, thus triggering the Illinois office's obligation to ratify the agreement to Doe's benefit under the ratification clause. *See* Defendant's Exhibit No. 1, ¶ 10. Doe argues that through this ratification, the Illinois office has bound itself to the term requiring all efforts to be expended to persuade the U.S. Attorney for the Northern District of Illinois to file a Rule 35(b) motion. Doe continues that implicit in this promise is the promise to file the motion in this case.

True, the Illinois office has ratified the agreement, but ratification operates to bind a principal to the unauthorized promises made by an agent on behalf of the principal. *See Old Security Life Ins. Co. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 740 F.2d 1384, 1392 (7th Cir.1984). Here, the only promises at issue made on behalf of a principal are those respecting use immunity. These terms are entered on behalf of the United States Government. The Illinois office has ratified these terms both through its concession and through operation of the ratification clause.[8] But with respect to Rule 35(b), ratification has no application. Ratification makes binding previously unauthorized promises *on behalf of a principal.* Promises made by an agent clearly in its individual capacity cannot be ratified by the principal through its actions. *See Stone v. First Wyoming Bank N.A., Lusk*, 625 F.2d 332, 345 (10th Cir.1980). As already demonstrated, the promises relating to Rule 35(b) were made solely on behalf of the agreeing district and in no way attempted to bind the Illinois office. It makes no sense to speak of the Illinois office ratifying this promise because, even if it were

ratified, the promise does not purport to require anything of the U.S. Attorney for the Northern District of Illinois.

Doe also misunderstands the effect of his interrogation by the Illinois office. Doe does not assert that the Illinois office asked him questions that the agreeing district could not have asked him under the agreement. Quite the contrary, the agreement specifically requires Doe to tell all he knows about criminal offenses committed anywhere in the United States, including Illinois. *See* Defendant's Exhibit No. 1, ¶ 1. Instead, Doe argues that the U.S. Attorney for the Northern District of Illinois, by interrogating him under the agreement, has adopted the agreement as its own and thereby accepted the obligations of the agreeing district. In essence, Doe contends that the right to interrogate him under the agreement could not be assigned to the Illinois office without its accepting all of the obligations to which the agreeing district is bound. But Doe's argument fails because the agreement plainly gives the agreeing district the right to designate agents to interrogate him. *See id.* Moreover, the agreement implicitly contemplates that prosecuting authorities from other jurisdictions would question him. *See* Defendant's Exhibit No. 1, ¶ 4. Indeed, from what we can glean from the scant record before us, it appears that Doe *himself* first invited the Illinois office to interrogate him in an effort to convince the U.S. Attorney for the Northern District of Illinois that his assistance was both genuine and complete. *See* Transcript of Hearing on Rule 35(b) at 56, 66.

In general, unless the parties have agreed otherwise, contract rights are freely assignable unless assignment would materially change the duties of the obligor, increase the obligor's risk, or impair the obligor's chance of obtaining return performance. *See Sally Beauty Co., Inc. v. Nexx-*

---

**8.** The clause of the agreement extending use immunity to Doe is entered into by the U.S. Attorney on behalf of "the United States Government." Defendant's Exhibit No. 1, ¶ 3. It is quite likely that the Illinois office was obligated to abide by this term regardless of whether it ratified the agreement or not. For a general discussion of the inherent or apparent authority of one governmental office to bind another governmental office in a plea agreement, see generally *Staten v. Neal*, 880 F.2d 962, 965–66 (7th Cir.1989).

*us Products Co., Inc.*, 801 F.2d 1001, 1007 n. 6 (7th Cir.1986); *Overseas Dev. Disc Corp. v. Sangamo Constr. Co., Inc.*, 686 F.2d 498, 504 n. 10 (7th Cir.1982); *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293, 1297–98 (5th Cir.1972); *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 127 Ill.Dec. 5, 10–11, 532 N.E.2d 834, 839–40 (1988); J. CALAMARI & J. PERILLO, CONTRACTS §§ 18–10 through 18–16 (3d ed. 1987). Assignment here did not at all change Doe's duty to disclose his knowledge of criminal activity to those persons designated by the agreeing district, did not increase any of Doe's risks, and did not at all impact Doe's chances of obtaining return performance under the cooperation agreement. Therefore, the right to interrogate Doe under the agreement could be lawfully assigned to the Illinois office. Moreover, the assignment did not operate to delegate any contractual duties to the Illinois office.

We cannot say the District Court was clearly erroneous in finding no agreement

to file a Rule 35(b) motion. The Illinois office was not required even to consider the recommendations of the other districts in making its decision because it was expressly *not bound* by the Rule 35(b) provisions of the cooperation agreements. The Illinois office received all of the benefits of the cooperation agreements without incurring any obligations because that is what the agreements allow.[9]

*3. Did the refusal to file a Rule 35(b) motion violate due process as applied to this case?*

■ Doe argues that the refusal to file the Rule 35(b) motion by the Government violated due process. He is not attacking Rule 35(b) on its face.[10] Rather, he alleges the U.S. Attorney violated substantive due process as applied to the facts of this case.[11]

■ Twice recently, we have addressed the due process as applied attack that Doe

**9.** Doe also contends that estoppel and novation should work to bind the Illinois office. But in order to prevail under either theory, Doe must do more than argue that the Illinois office interrogated him under the agreement. As already established, the Illinois office could interrogate him under the agreement without incurring any obligation respecting Rule 35(b). And so, for Doe to prevail on his estoppel theory, he must show the Illinois office made a representation regarding Rule 35(b) upon which he reasonably relied to his detriment. *See Old Security,* 740 F.2d at 1392. Moreover, to estop the United States, Doe must show the Government's actions are tantamount to affirmative misconduct. *See United States v. Monroe Serv. Co.,* 901 F.2d 610, 612–13 (7th Cir.1990). Even if Doe interpreted the interrogation by the Illinois office as saying something about Rule 35(b), surely the *fact* of the interrogation could only be an *innocent* representation not amounting to affirmative misconduct. And for Doe to establish novation, he must point to actions of the Illinois office evidencing an intent to be substituted in the agreement. *See CH2M Hill Central, Inc. v. Madison–Madison International, Inc.,* 895 F.2d 286, 290 (7th Cir.1989). Therefore, to obtain relief under either of these theories, Doe must do more than point to the fact that he was interrogated under the agreement. But because the record is hopelessly incomplete about this, we have no choice but to reject Doe's argument. If facts exist that could have helped Doe to prevail, it was Doe's duty to include them in the record on appeal. *See id.* at 288 n. 2.

**10.** We have soundly rejected the facial attack. Because a criminal defendant possesses no con-

stitutional right to have the District Court individually consider his or her substantial assistance in sentencing, Congress does not violate due process by conferring the right conditioned upon the prosecutor's discretion. *United States v. Donatiu,* 922 F.2d 1331, 1333 (7th Cir.1991); *United States v. Valencia,* 913 F.2d 378, 386 (7th Cir.1990); *United States v. Lewis,* 896 F.2d 246 (7th Cir.1990).

**11.** Doe has also raised a procedural due process argument, but this argument must fail. In order to trigger requirements of due process procedures, Doe must establish that he has been denied a liberty or property interest—a legitimate claim of entitlement. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Thornton v. Barnes,* 890 F.2d 1380, 1386 (7th Cir.1989). As we have already indicated, the Constitution provides no right to the individualized sentencing Doe seeks. *See supra* note 10. And Rule 35(b) provides Doe with no legitimate claim of entitlement absent a Government's motion. *See generally Thornton,* 890 F.2d at 1386 (Although the Constitution, not the statute or rule, provides the minimally due procedures, we must look to the procedures provided by the rule or statute to determine whether a legitimate claim of entitlement has been established.). Because the Government's refusal denied Doe no liberty or property interests, the Fifth Amendment's requirement of due process is not implicated. *See id.*

makes. In both cases we rejected it. *See Donatiu*, 922 F.2d at 1334–36; *United States v. Bayles*, 923 F.2d 70, 72 (7th Cir. 1991). However, this Circuit has yet to articulate definitively the precise test to be used in answering the due process question. In *Bayles*, we indicated that the appropriate standard for reviewing the decision not to file a motion might be the same standard by which we review the Government's decision whether or not to prosecute a case. But neither case rejects that we might also review for prosecutorial bad faith. *Id.; Donatiu*, 922 F.2d at 1335.[12] But because Doe has offered no evidence tending to show bad faith, we believe it unnecessary and unwise to imagine today a set of hypothetical facts showing prosecutorial bad faith that might warrant judicial review.

We accordingly restrict our analysis to Doe's equal protection claim, which we must reject.[13] Regardless of whether Doe has shown that others similarly situated were treated differently, Doe has failed to establish the differential treatment was motivated by an invalid purpose. Doe concedes he was not denied the motion based on his being a member of a suspect class. We must therefore look at the Government's motivation under rational basis scrutiny. Doe was convicted of three serious crimes. The U.S. Attorney has argued that if Doe's sentence were reduced any further, the deterrence value from the prosecution would be gutted. The District Court apparently agreed, stating in its Order that "the recent sentence reduction [under the old Rule 35(b)] reflects a proper accommodation between the assistance giv-en and the offenses for which the defendant was convicted." Order Denying Rule 35(b) Motion.[14] On these facts, the Government's decision not to file the motion was clearly not based on impermissible grounds.

## CONCLUSION

The District Court's finding that no promise was made by the U.S. Attorney's office to file the motion was not clearly erroneous. We also reject the contention that the choice not to file violated substantive due process as applied. The Government thus had no obligation to seek a correction of Doe's sentence based on substantial assistance. The decision of the District Court is

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

I agree wholly with almost all that Judge Eschbach has written for the panel. I write separately only to indicate my belief that the proper test for measuring any prosecutor's refusal to file a Rule 35(b) motion is whether the refusal is arbitrary or in bad faith. *See United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990). *United States v. Bayles*, 923 F.2d 70, 71–72 (7th Cir.1991), leans somewhat against finding such an exception, and *United States v. Donatiu*, 922 F.2d 1331, 1334–35 & n. 3 (7th Cir.1991), remains agnostic on the matter; neither resolved the issue definitively. Other circuits, as Judge Eschbach points

---

**12.** Other Courts of Appeals have struggled with the question of how carefully to review the prosecutor's decision not to file the motion. The Eighth Circuit has indicated that the question might be whether prosecutorial bad faith or arbitrariness accompanies the decision. *See United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir.1989). The First Circuit has hinted the standard might be arbitrary and capricious. *United States v. La Guardia*, 902 F.2d 1010, 1018 (1st Cir.1990). But the Second Circuit has likened the decision not to file the motion "to other prosecutorial decisions, such as whether to press charges and which charges to press," and ruled that sentencing departure requests "must be given the same high level of defer-ence." *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990).

**13.** "Although the Fifth Amendment, unlike the Fourteenth, does not contain an equal protection clause, it does contain an equal protection component." *Wayte v. United States*, 470 U.S. 598, 608 n. 9, 105 S.Ct. 1524, 1531 n. 9, 84 L.Ed.2d 547 (1985).

**14.** Based upon this finding, the Government has argued that even if it were required to file a motion, any error in failing to do so was harmless because the District Court has indicated that any Rule 35(b) motion would be denied. We need not reach this argument.

out, are not consistent on the question, and at this time I believe that due process requires such an exception to the government's discretion.

RIPPLE, Circuit Judge, concurring.
I join the judgment of the court.