**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Armando MARTINEZ–CORTEZ,
Defendant–Appellant.**

**No. 89–50665.**

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 2, 1990.
Decided Jan. 30, 1991.

Michael Pancer, San Diego, Cal., for defendant-appellant.

Bruce R. Castetter and John R. Kraemer, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before PREGERSON, REINHARDT and HALL, Circuit Judges.

PER CURIAM:

Alejandro Sigueiros–Lopez, a.k.a. Armando "Alex" Martinez–Cortez, appeals his sentence on the grounds that the Sentencing Commission violated its congressional mandate in formulating the Sentencing Guidelines and that the General Accounting Office study of the Guidelines' potential impact was a sham.[1] We affirm.

## I. FACTS

On September 6, 1989, appellant Armando Martinez–Cortez entered a plea of guilty to Count 4 of a superceding information charging possession of approximately 466.1 kilograms of cocaine with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The sentencing range for Appellant's offense under the Guidelines was 151 to 188 months in custody. The district court actually sentenced appellant to 151 months imprisonment to be followed by 5 years of supervised release. The district court also imposed a $17,500 fine, to be paid immediately. On appeal, Martinez–Cortez asserts that the Guidelines, which formed the basis of his sentence, are unconstitutional.

## II. DISCUSSION

### A. THE CONGRESSIONAL MANDATE

#### 1. Separate Type-of-Sentence Guideline

■ Appellant asserts that the Sentencing Commission ignored the legislative requirement for a separate type-of-sentence guideline; that is, a two-stage inquiry which first asks whether a defendant should be imprisoned (or granted probation) and then asks how long imprisonment or probation should last. This argument is grounded upon two independent theories: first, that 28 U.S.C. §§ 994(a)(1)(A)–(B), pursuant to their "clear terms," mandate separate type-of-sentence guidelines and, second, that the absence of a separate type-of-sentence guideline has so limited the availability of probation that the Commission exceeded its congressional mandate in creating the present structure.[2] We find both of these theories to be without merit.

On their face, 28 U.S.C. §§ 994(a)(1)(A)–(B) do not "mandate" a separate sentencing guideline for probation.[3] Instead, 28 U.S.C. §§ 994(a)(1)(A)–(E), of which the provisions cited by appellant are a part, set forth a number of issues which the guidelines must incorporate, including fines, probation, imprisonment, multiple sentences, supervised release, as well as concurrent and consecutive sentences. Although appellant attempts to sever imprisonment and probation from these provisions as warranting separate type-of-sentence treatment, this distinction is not supported by the statute or its legislative history.

Needless to say, nowhere does 28 U.S.C. § 994(a)(1) require—or even imply—that *each* of its provisions must be the subject of a separate guideline. Indeed, this analysis would lead to a "Rubik's Cube" of overlapping guidelines which would cripple the very uniformity the Guidelines, rightly or wrongly, were supposed to create. We,

---

**1.** Appellant raises numerous other constitutional challenges to the Sentencing Guidelines. We address those contentions in the memorandum disposition filed concurrently with this opinion.

**2.** Under the Guidelines, imprisonment and probation are part of a single "grid" with "straight" probation being permitted only in those cases in which the term of imprisonment, as defined under the Guidelines grid, ranges from one to six months. Guidelines Manual §§ 5B1.1–1.4.

**3.** 28 U.S.C. §§ 994(a)(1)(A)–(B) state that the Sentencing Commission will promulgate:

(1) guidelines, as described in this section, for use of a sentencing court in determining the sentence to be imposed in a criminal case, including—

(A) a determination whether to impose a sentence to probation, a fine, or a term of imprisonment;

(B) a determination as to the appropriate amount of a fine or the appropriate length of a term of probation or a term of imprisonment;

like the other courts which have addressed this theory, therefore reject it. *See United States v. Macias–Pedroza,* 694 F.Supp. 1406, 1417 (D.Ariz.1988); *United States v. Myers,* 687 F.Supp. 1403, 1421 (N.D.Cal. 1988).[4]

The second theory behind appellant's separate type-of-sentence argument is similarly unpersuasive. Few would deny that the Guidelines have greatly limited the availability of probation. The critical question is whether this restriction is in contravention of the applicable congressional mandate. The linchpin of appellant's probation theory is that the federal statute authorizing probation, which was part of the Sentencing Reform Act that established the Sentencing Commission, prohibits probation only for defendants who have been convicted of Class A or B felonies, or are otherwise imprisoned, or whose crimes are covered by a statute which itself precludes probation. 18 U.S.C. § 3561. Thus, appellant argues, Congress intended probation to be available for all offenses not mentioned in 18 U.S.C. § 3561.

The legislative history of the Sentencing Reform Act, however, indicates that Congress did not intend 18 U.S.C. § 3561 to require that probation be available to all categories of defendants not stripped of that remedy by the section: § 3561 informs the Sentencing Commission of categories as to which it may not authorize probation; it does not require the Commission to make it available in all others. *See United States v. White,* 869 F.2d 822, 827 (5th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). To the contrary, § 3561 gives the Sentencing Commission the discretion to determine whether and when probation shall be available with respect to those crimes for which probation is not proscribed. *Id.* Although the Com-

mission certainly could have been more lenient in its treatment of the subject of probation, it was not required to be so.[5]

Accordingly, we find that the Commission's determinations on the separate type-of-sentence question are "sufficiently reasonable" to fulfill the Congressional mandate. *Chevron U.S.A. v. Nat'l Resources Defense Counsel, Inc. et. al.,* 467 U.S. 837, 843–46, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *United States v. Lee,* 887 F.2d 888, 890 (8th Cir.1989).

2. Prison Population

■ The Guidelines state that they will lead to an estimated 10% increase in the federal prison population over a 10–year period. Appellant argues that this impact violates the congressional mandate that:

> The Guidelines prescribed under this chapter shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission.

28 U.S.C. § 994(g).

At the outset, we note that every court addressing this argument has rejected it. *See e.g., United States v. Foote,* 898 F.2d 659, 666–67 (8th Cir.), *cert. denied sub nom. Thompson v. United States,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990); *United States v. Erves,* 880 F.2d 376, 380–81 (11th Cir.), *cert. denied sub nom. Villarreal–Farias v. United States,* —— U.S. —— 110 S.Ct. 416, 107 L.Ed.2d 381 (1989); *United States v. White,* 869 F.2d at 827; *United States v. Saldivar,* 730 F.Supp. 329, 331 (D.Nev.1990); *United States v. Amesquita–Padilla,* 691 F.Supp. 277, 288 (W.D.Wash.1988).

Our reading of 28 U.S.C. § 994(g) and its legislative history leads us to the same conclusion. First, the statute itself states

---

4. To the extent that appellant's argument on this issue relies on the larger assertion that the single grid structure unduly limits judicial discretion in sentencing and/or deprives a defendant of an individualized sentence, these theories have already been rejected by this court. *See United States v. Belgard,* 894 F.2d 1092 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990) (judicial discretion);

*United States v. Brady,* 895 F.2d 538, 541 (9th Cir.1990) (individualized sentence).

5. In fact, the Senate rejected a proposal that judges be required to consider the least restrictive sentencing alternative (i.e. probation). *See* S.Rep. No. 225, 98th Cong., 2d Sess. 37, 78 (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182 ("S.Rep.").

only that the Commission should attempt to "minimize" the Guidelines' impact on the prison population—*not* that it maintain the prison population at its present level. In fact, 28 U.S.C. § 994(g) authorizes the Commission to recommend the expansion of prison facilities. Furthermore, the legislative history indicates that 28 U.S.C. § 994(g) was not intended to "limit the Sentencing Commission in recommending guidelines that it believes will best serve the purposes of sentencing." S.Rep. at 175, 1984 U.S.Code Cong. & Admin.News 3358.

In light of these factors, we find that the expected 10% increase in the federal prison population over a 10–year period does not violate the congressional mandate of 28 U.S.C. § 994(g).[6]

### 3. Supervised Release

■ Appellant also argues that the Sentencing Commission's imposition of mandatory supervised release following incarceration for any person convicted of a felony violates its congressional mandate. We, like the district courts which have addressed this question, find no merit in this argument. *See Amesquita–Padilla,* 691 F.Supp. at 288–89 (upholding Guidelines against this challenge); *Saldivar,* 730 F.Supp. at 331 (same).

Congress instructed the Sentencing Commission that it make "a determination whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment, and, if so, the appropriate length of such a term." 28 U.S.C. § 994(a)(1)(C). In doing so, Congress did not specify whether the Commission was to create a discretionary structure, a quasi-discretionary structure, or a mandatory structure. *Id.* Accordingly,

the Commission's establishment of mandatory supervised release, while not particularly magnanimous, was "sufficiently reasonable" in responding to 28 U.S.C. § 994(a)(1)(C). *See* Guidelines Manual §§ 5D1.1–1.3.[7]

### 4. Fines

■ Appellant next asserts that the Guidelines violate their congressional mandate by establishing mandatory fines rather than discretionary fines. We find this argument unpersuasive. *See Amesquita–Padilla,* 691 F.Supp. at 289.

First, to the extent that the Guidelines generally limit discretion at all levels—indeed, this was their primary purpose—the creation of a mandatory fine structure can hardly be inconsistent with the Commission's general mandate. *See Mistretta v. United States,* 488 U.S. 361, 366, 109 S.Ct. 647, 651, 102 L.Ed.2d 714 (1989) (noting that Congress was concerned with the "unjustified" and "shameful" discrepancies in the discretionary sentencing system). Second, the Sentencing Commission was instructed by Congress to determine when to impose a fine and the appropriate amount of that fine—not to afford the courts the discretion to perform these functions. *See* 28 U.S.C. §§ 994(a)(1)(A) and (B). Third, and finally, judges *have* discretion to waive any fine upon a finding of inability to pay or undue burden on a defendant's dependents, as well as wide discretion in determining the amount of the fine based on their analysis of the factors set forth in 18 U.S.C. § 3572. *See* Guidelines Manual § 5E1.2.[8]

### B. THE GENERAL ACCOUNTING OFFICE STUDY

■ Appellant's final argument is that the General Accounting Office study of the

---

6. It is also worth noting that the Sentencing Commission extensively studied the effect of the proposed guidelines upon the prison population. *See Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 62–75, June 18, 1987.

7. Appellant's argument that the Sentencing Commission violated its congressional mandate by imposing minimum periods of supervisory release where Congress had previously set maxi-

mum periods is similarly meritless. None of the Guidelines call for maximum periods which are inconsistent with those prescribed by Congress. *Compare* 18 U.S.C. § 3583(b) *with* Sentencing Guidelines Manual § 5D3.2(b).

8. In fact, here the applicable Guidelines fine range was between $17,500 and $4 million. The district court, exercising its discretion, imposed the lowest possible amount.

Guidelines' potential impact was both untimely and a "sham." In *United States v. White*, 869 F.2d 822, the Fifth Circuit addressed this very issue. In doing so, that court held that,

> The enabling act and its legislative history clearly establish that the reports of the Commission and the GAO were solely for Congress's benefit in evaluating the guidelines ... If Congress had desired more time or better reports, it had the time and the power to act ... This court will not scrutinize the merits or timeliness of reports intended solely for the benefit of Congress. We would have no standards with which to judge such a question. Such a determination is for Congress and is essentially a political question outside the province of the judiciary.

*White*, 869 F.2d at 829 (citations omitted).

We find the reasoning of the *White* court on this issue compelling and therefore adopt it here. *See also United States v. Erves*, 880 F.2d at 379–80 ("[d]etermining whether reports to Congress are adequate to enable it to do its job is not the role of the Judiciary Branch"); *United States v. Macias–Pedroza*, 694 F.Supp. at 1418 ("[t]he GAO reported to Congress as required; it is for Congress to decide if the report is 'adequate'"); *United States v. Chambless*, 680 F.Supp. 793, 802–03 (E.D. La.1988) (same). Accordingly, we reject appellant's argument.

### III. CONCLUSION

The Sentencing Guidelines have withstood far more serious challenges than those raised here by appellant. Although we have serious concerns regarding the effect of the Guidelines on the administration of justice, we do not believe that their infirmities rise to the level of a constitutional violation. Accordingly, we affirm.

AFFIRMED.